**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000542**
**25-MAY-2022**
**08:18 AM**
**Dkt. 150 SO**

NO. CAAP-21-0000542


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


IN THE INTEREST OF M CHILDREN:
MM, CM1, JM, CM2, PM, UBBM
(FC-S NO. 17-00216)


IN THE INTEREST OF CM3
(FC-S NO. 19-00222)


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

Mother-Appellant/Cross-Appellee (**Mother**) appeals and Father-Appellee/Cross-Appellant (**Father**) cross-appeals from the Family Court of the First Circuit's (**Family Court**) October 1, 2021 Orders Terminating Parental Rights.[1]

Upon careful review of the record and the briefs submitted by Mother and Father (collectively **Parents**) and having given due consideration to the arguments advanced and the issues raised, we resolve Parents' arguments as follows, and affirm.

The Family Court may grant a motion to terminate parental rights where the following occurs:

---

[1] The Honorable John C. Bryant, Jr., presided over a consolidated trial.

(a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:

 (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;

 (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care;

 (3) The proposed permanent plan is in the best interests of the child. In reaching this determination, the court shall:

  (A) Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and

  (B) Give greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care; and

 (4) The child consents to the permanent plan if the child is at least fourteen years old, unless the court consults with the child in camera and finds that it is in the best interest of the child to proceed without the child's consent.

Hawaii Revised Statutes (**HRS**) § 587A-33(a) (2018).

We review the Family Court's findings of fact (**FOF**) for clear error and will vacate only when the record lacks substantial evidence to support the finding, or despite substantial evidence, we are left with a definite and firm conviction that a mistake has been made. In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. Unchallenged FOF are binding on appeal. In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002). Likewise, we

review conclusions of law (**COL**) that present mixed questions of law and fact for clear error, which include determinations of whether a parent is willing and able to provide a safe family home and what is in a child's best interests. In re JM, 150 Hawaiʻi 125, 137, 497 P.3d 140, 152 (App. 2021).

(1) Mother contends that Petitioner-Appellee/ Cross-Appellee Department of Human Services (**DHS**) "failed to establish by clear and convincing evidence that mother is not willing and able to provide a safe family home for [MM, CM1, JM, CM2, PM, UBBM, and CM3 (collectively **Children**)] even with the assistance of a service plan or in the foreseeable future" and that the "permanent plan with the goal of adoption to current resource caregiver is not in the Children's best interest." (Formatting altered.)

In doing so, Mother challenges FOF 84, 140-143, 146, 158, 160, 177-179, 183, 185, 187, 189, 190, and 192 and COL 12, 13, and 15-17. Mother indicates the bases for her objections to these FOF and COL as set forth in her argument as follows: (a) DHS failed to make reasonable reunification efforts because Mother required a Marshallese interpreter for her services, and DHS failed to provide one until 2020; (b) DHS failed to provide Mother written materials in Marshallese; (c) though DHS provided Mother a list of Marshallese therapists, none were willing to assist her; (d) Mother and Children miss each other; (e) DHS did not take into account her cognitive deficiencies by ensuring that service providers confirmed she understood her services; and (f) she believes reunification is in Children's best interests.

The undisputed FOF, however, indicate that Mother's services were explained to her with the assistance of a Marshallese interpreter, and she does not contend she was otherwise unable to understand them. FOF 147. Mother was inconsistent in participating in the services offered. She failed to complete outreach and counseling services, and did not attend these services because she forgot, overslept, or remembered too late. FOF 66, 150, 151, 152, 153, 154, and 156.

Mother had a translator for her domestic violence services with Parents and Children Together (**PACT**), but she failed to appear at eight sessions. She eventually declined to have an interpreter present, and PACT ultimately closed her case due to her non-attendance. FOF 150, 151. After DHS re-referred Mother to the PACT services and she completed them, she did not learn and integrate the skills offered. FOF 152. Mother had an interpreter for her parenting sessions with Comprehensive Counseling and Support Services (**CCSS**), but CCSS closed her case due to her non-compliance. FOF 153, 154.

In October 2019, DHS referred Mother to Marshallese therapists, but Mother did not refer herself to the service provider until June 2021, one month before trial. FOF 159. The DHS-assigned social worker informed CCSS that Mother "would require more help and one-on-one" time, and Mother points to no evidence that DHS or service providers did not consider her cognitive abilities.

Finally, Mother's arguments that she and Children miss each other and that she believes it is in their best interests to be returned to her do not demonstrate a lack of substantial

4

evidence or give reason to believe a mistake was made.  In re Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.  In sum, Mother fails to show that the record lacks substantial evidence to establish the elements of HRS § 587A-33(a), or that the Family Court otherwise manifestly abused its discretion in terminating her parental rights.  In re AA, 150 Hawaiʻi 270, 283, 500 P.3d 455, 468 (2021).

(2) Father contends that "[t]here was not sufficient evidence for the court to have found by clear and convincing evidence that [he was] not presently nor in the reasonably foreseeable future, be willing and able to provide the Children with a safe family home, even with the assistance of a service plan."  In doing so, Father challenges FOF 180-182, 190, and 192, and COL 12 and 13.

To support his contention, Father argues that DHS failed to provide reasonable reunification efforts because: (a) DHS's service plan only ordered him to do urinalysis tests and no other services despite his unresolved domestic violence issues; (b) when asked whether there was a possibility of reunification, the DHS social worker testified that DHS's only goal was termination of parental rights; (c) DHS failed to meet Father's request for couples' counseling; (d) he was not appointed counsel for Hawaiʻi Family Drug Court (**Drug Court**); and (e) Mother's Family Court translator did not accurately translate her testimony.

Father, however, fails to identify any objection to the Family Court's finding of reasonable efforts or a timely claim for additional services.  In re Doe, 100 Hawaiʻi 335, 343-44, 60

5

P.3d 285, 293-94 (2002). Notwithstanding, DHS's service plans consistently required services to address all his safety issues and pursued a goal of reunification. It was not until the months preceding trial that the Family Court discontinued mandatory services and DHS changed its permanency goal to termination of parental rights.

Moreover, Father fails to show how this was unreasonable in light of Father's failure to progress in services and resolve his safety issues. Cf. In re Doe, 100 Hawaiʻi at 344 n.15, 60 P.3d at 294 n.15 (noting that it was reasonable for DHS to engage in only three months of reunification efforts with the mother due to her "continued failure to appear before the court at any of the previously scheduled hearings and her express unwillingness to participate in any service programs"). Additionally, Father points to no evidence that DHS failed to meet a request for couples' counseling. And Father did not object to the Family Court's finding that he waived his right to counsel for Drug Court, and he fails to explain the nature of the alleged inaccuracies by Mother's court translator or how they prejudiced him.

Finally, substantial evidence supported termination of Father's parental rights. Not only did Father consistently fail to progress in his services, but his substance abuse and domestic violence issues remained unresolved in the months leading up to trial, as evidenced by his methamphetamine relapse in March 2021, and Parents' incidents of violence, including Father throwing furniture in Children's presence, resulting in CJM returning to

6

foster custody in April 2021.  FOF 66, 67, 69-71, 116, 133, and 164.

In sum, Father fails to show that the record lacks substantial evidence to establish the elements of HRS § 587A-33(a), or that the Family Court otherwise manifestly abused its discretion in terminating his parental rights.  In re AA, 150 Hawaiʻi at 283, 500 P.3d at 468.

For the foregoing reasons, we affirm the Family Court's October 1, 2021 Orders Terminating Parental Rights.

DATED:  Honolulu, Hawaiʻi, May 25, 2022.

| | |
|---|---|
| On the briefs: | /s/ Keith K. Hiraoka<br>Presiding Judge |
| Rebecca S. Lester,<br>for Mother-Appellant/<br>Cross-Appellee. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Tae Chin Kim,<br>for Father-Appellee/<br>Cross-Appellant. | /s/ Sonja M.P. McCullen<br>Associate Judge |
| Maria F. Williams<br>Julio C. Herrera,<br>Deputy Attorneys General,<br>for Petitioner-Appellee/<br>Cross-Appellee,<br>Department of Human Services. | |